**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| QBE INSURANCE CORPORATION,<br><br>    Plaintiff,<br>v.<br><br>BARRIER CORP., an Illinois corporation,<br><br>    Defendant. | Case No. 14-cv-9512<br>Hon. Robert W. Gettleman<br>Mag. Maria Valdez |

**BARRIER CORP.'S RESPONSE TO QBE INSURANCE CORPORATION'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Barrier Corp. (hereinafter "Barrier"), by and through its attorneys, Sara E. Cook, Bruce B. Marr, Kristin D. Tauras and McKenna Storer, provides this Response to the Motion for Judgment on the Pleadings by Plaintiff QBE Insurance Corporation (hereinafter "QBE"), and states as follows:

### I.    INTRODUCTION

This is the second declaratory judgment action brought by QBE seeking a declaration that QBE has no obligation to provide insurance coverage/defense to its insured, Barrier in the underlying litigation of *Wing Street of Arlington Heights Condominium Association v. Village Green, LLC et. al.,* 10 L 4330, pending in the Circuit Court of Cook County, Illinois (hereinafter "State Court Litigation"). Barrier has tendered the 7th Amended Complaint filed by the Plaintiffs in the State Court Litigation requesting indemnity and defense coverage.    QBE has refused the tender. QBE argues that a Circuit Court of Cook County judge's previous ruling that there was no duty to defend Barrier with respect to the Plaintiff's 3rd Amended Complaint in the State

1

Court Litigation is now *res judicata* with respect to the allegations in the 7th Amended Complaint in the State Court Litigation. QBE is wrong.

The 7th Amended Complaint is a new case superseding previous amended complaints, raises new allegations with respect to Barrier and, for the first time, sets forth an "occurrence" as that word is specifically defined in the QBE policies with Barrier. Accordingly, *res judicata* and issue preclusion do not apply.

## II. SUMMARY OF RELEVANT FACTS

QBE provided an accurate, yet incomplete, statement of facts in its Motion. Additional facts are provided below regarding the Cook County Circuit Court judge's ruling that there was no "occurrence" alleged in the 3rd Amended Complaint, as well as the difference in the allegations between the 3rd Amended Complaint, which was the basis of that ruling of no "occurrence," and the 7th Amended Complaint, which now alleges an "occurrence" as defined by the QBE policies. These facts are essential to an understanding of why *res judicata* and issue preclusion do not apply.

### A. QBE Policies

QBE issued multiple, serial policies to Barrier as an additional insured. The policies are basically the same. See policies numbered FCGC706948-00-FCGC706948-03, which are attached to the Complaint filed by QBE. (Dkt # 1, Ex. A-D)

### 1. Insuring Agreement

Each QBE policy has the following insuring agreement:

> (a) We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies….(b) This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" ….

2

### *2. Definitions*

The phrase "property damage" is defined as follows:

- a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general or harmful conditions."

### *3. Notice*

The QBE policies have a "Duties In The Event Of Occurrence, Offence, Claim Or Suit" provision that states:

- a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offence which may result in a claim. To the extent possible, notice should include….

- b. If a claim is made or "suit" is brought against any insured, you must:
    - (1) Immediately record the specifics of the claim or "suit" and the date received; and
    - (2) Notify us as soon as practicable.

### B. State Court Litigation

The State Court Litigation involves allegations of property damage by water infiltration and other defects in construction to a condominium building, as well as personal property damage to individual residents of the building (hereinafter "Construction Project"). Barrier was not sued in the original complaint, but was first sued in the Second Amended Complaint. Following service, Barrier gave notice to QBE. A

3

3rd Amended Complaint was filed and Barrier also gave prompt notice of the 3rd Amended Complaint.

### C. 3rd Amended Complaint

The 3rd Amended Complaint alleged that Barrier used defective products in the Construction Project. (Dkt 13, Ex. F) Counts VIII and IX were directed against Barrier. The 3rd Amended Complaint alleged that Barrier breached warranties with "respect to the installation of concrete toppings…." (Dkt 13, Ex. F, Count VIII ¶58 Count IX, ¶52) The 3rd Amended Complaint alleged that the work defects:

> "resulted in leaks that have caused substantial damages to common elements, including but not limited to a high degree of deterioration and rot of wood immediately surrounding the openings of the building, the sheathing, framing (including, without limitation, structural 2x4 framing members, sill plates, and other wood framing members), and the back side of interior drywall, saturated insulation, balcony framing, and creating conditions where the saturated building materials were an ideal breeding ground for mold, thus causing the growth of mold. The defects have also caused damage to drywall, garage walls and ceilings, the garage ventilation system, and interior finishings of the units."

(Dkt 13, Ex. F, Count VIII, Paragraph 62, Count IX, ¶ 56)

### D. First Declaratory Judgment – 3rd Amended Complaint (QBE I)

QBE filed a declaratory judgment against Barrier in the Circuit Court of Cook County, alleging that it did not owe a duty to defend/coverage to Barrier in the State Court Litigation because (1) there was no "occurrence" or "property damage" alleged as defined by the QBE policies; (2) exclusions for "property damage" to "your work," damage to "impaired property" and "mold" applied, and (3) Barrier provided late notice of the "occurrence" (hereinafter "QBE I"). (Dkt. 1, ¶9)

In ruling on cross-motions for summary judgment, the Cook County Circuit Court in QBE I compared the allegations in the 3rd Amended Complaint in the State Court

Litigation to the QBE Policies' definition of "occurrence". (Dkt, 1. Ex. F) The Circuit Court noted in QBE I that defective construction claims generally do not fall within the coverage of commercial general liability policies, but also noted that Illinois has recognized that construction defects that damage something other than the project itself will constitute an "occurrence" under such a policy, citing *CMK Dev. Corp. v. West Bend Mut. Ins. Co.*, 395 Ill.App.3d 830, 917 N.E.2d 1195 (1st Dist. 2009). (Dkt, 1. Ex. F, p.12) The Circuit Court in QBE I determined that the State Court Litigation did not allege an "occurrence" because it did not allege damage to anything other than the structure or Construction Project itself:

> In comparing the facts alleged in the underlying complaint, to the relevant portions of the Policy, the Court finds that the underlying complaint does not allege facts within or potentially within the Policy's coverage. Namely, the underlying complaint does not allege any damage to something other than the structure or Project itself, such as damage to the Claimants' furniture, clothing, carpeting, upholstery or drapery. Rather the underlying complaint alleges defective workmanship by Barrier, and as such, falls outside QBE's duty to defend. (Dkt. 1, Ex. F, p.12)

The Circuit Court further stated, "while the Court's finding that the allegations of the underlying complaint do not trigger QBE's duty to defend, the Court nonetheless, addresses QBE's argument that Barrier breached the 'notice of occurrence' condition under the Policy" and held, without any contractual analysis of the late notice provisions of the QBE policies, that Barrier provided late notice of an "occurrence." (Dkt. 13, Ex. F, p.12-13)

### E. 7th Amended Complaint In The State Court Litigation

On January 23, 2014, the Plaintiffs in the State Court Litigation filed a 7th Amended Complaint against Barrier that, for the first time, alleged property damage to something other than the building. (Dkt.13, Ex. G) Counts XV (Breach of Implied

5

Warranty of Habitability- Minton) and XVI (Breach of Implied Warranty of Good Workmanship and Materials– Minton) were directed to Barrier.[1] With respect to Barrier, the 7th Amended Complaint alleges damage to personal property for the first time:

> resulted in leaks that have caused substantial damages to common elements, including but not limited to a high degree of deterioration and rot of wood immediately surrounding the openings of the building, the sheathing, framing (including, without limitation, structural 2X4 framing members, sill plates, and other wood framing members), and the back side of interior drywall, saturated insulation, deteriorating balcony framing, and creating conditions where the saturated building materials were an ideal breeding ground for mold, thus causing the growth of mold. The defects have also caused damage to interior drywall in Units, garage walls and ceilings, the garage ventilation system, the wall finishings inside Units including but not limited to paint and wallpaper, window treatments inside Units, flooring inside of Units including but not limited to carpet and wood floors***, personal property inside Units***, and interior finishings of units.

(Dkt.13, Ex. G, Count XV, ¶72, Count XVI, ¶72 (emphasis added))

### F.  Second Declaratory Judgment -7th Amended Complaint (QBE II)

Upon receipt of the 7th Amended Complaint in the State Court Litigation, Barrier made a demand to QBE for defense and indemnity for the 7th Amended Complaint. QBE refused the tender.  On November 26, 2014, QBE filed this cause of action in the District Court, naming only Barrier as a defendant (hereinafter "QBE II"). (Dkt. 1)

### III. ARGUMENT

**A.  QBE Has Not Named All Required Parties.**

In QBI I, QBE named Barrier and the underlying Plaintiffs as Defendants. In QBE II, QBE only named Barrier. QBE has not named all required parties, including the underlying Plaintiffs, Wing Street of Arlington Heights Condominium Association, an

---

[1] Previously, on January 3, 2012, the judge in the underlying case granted motions to dismiss the implied warranty of good workmanship claims with prejudice as to all subcontractors, including Barrier. The 7th Amended Complaint included Count XVI's warranty claim to preserve appellate rights.

Illinois not-for-profit corporation, and the Board of Directors of Wing Street of Arlington Heights Condominium Association, parties that may affect diversity jurisdiction.

In federal court proceedings, even those based on diversity, the courts look to Rule 19(a) of the Federal Rules of Civil Procedure to determine who are required parties. *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1992). The 7th Circuit has not addressed whether underlying Plaintiffs are required parties in an insurance declaratory judgment action. Nevertheless, Illinois District Courts have addressed this issue.

There are three relevant cases: *Fathers of the Order of Mount Carmel, Inc. v. National Ben Franklin Ins. Co. of Ill.*, 697 F.Supp. 971 (N.D. Ill. 1988); *Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 174 F.R.D. 416 (N.D. Ill. 1997); and *Georgia-Pacific Corp. v. Sentry Select Ins. Co.*, 2006 U.S. Dist. LEXIS 33975 (S.D. Ill. 2006). Under these decisions, the underlying Plaintiffs are required parties in the action by the an insurance company against an insured. Because the Plaintiff tort claimant has an interest in preserving insurance as an asset of the Defendant, these Courts held that the Plaintiff tort claimant is a required party under Rule 19.

Here, QBE initiated the filing of the action in QBE II seeking a complete determination of insurance coverage for the State Court litigation. (Dkt. 1, ¶1) Accordingly, under these District Court cases, the underlying plaintiffs are required parties to this action.

Joining the Board of Directors of Wing Street of Arlington Heights may impact diversity. Unincorporated associations, such as the Board of Directors, are a mere collection of individuals; when the persons composing the association sue in their

7

collective name, the individuals are the parties whose citizenship determines the diversity jurisdiction. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 100 S. Ct. 1779 (1980). To the extent that the Board of Directors is a required party, the individual board members must each be diverse. Because this issue impacts the subject matter jurisdiction of the Court, the Defendant raises it for the Court's consideration.

>  B. *Res Judicata* Does Not Apply To The Allegations In The 7th Amended Complaint Because There Is No "Identity Of Causes Of Action."

QBE argues claim preclusion or *res judicata* as a basis for denying a duty to defend Barrier as to the allegations under the 7th Amended Complaint. The doctrine of claim preclusion or *res judicata* applies when the second suit is brought between the same parties, and the second suit is based on the same cause of action as the first suit. *Walsh Const. Co. of Illinois v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 153 F.3d 830, 832 (7th Cir. 1998). *Res judicata* holds that a final judgment on the merits is conclusive as to the rights of the same parties in subsequent litigation as to all issues which might have been raised. *Northern Trust Co. v. Aetna Life & Surety Co.*, 192 Ill.App.3d 901, 905, 549 N.E.2d 712 (1st Dist. 1989) (Emphasis added). Inherent in this analysis is a requirement that the same facts are involved. The party relying on the doctrine of *res judicata* bears the heavy burden of showing what was determined by the prior judgment; if any uncertainty exists, the doctrine cannot be applied. *Northern Trust, supra, at* 905. QBE cannot meet this burden.

In order to invoke *res judicata*, the following elements must be shown: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of causes of action; and (3) an identity of the parties or their privies. *Downing v. Chicago*

*Transit Authority*, 162 Ill.2d 70, 73-74, 642 N.E.2d 456 (1994). QBE cannot show an identity of causes of action between QBE I and QBE II.

**1. The Transactional Test Demonstrates No "Identity of Cause of Action."**

Illinois applies the "transactional test" in determining whether identity of causes of action exists for purposes of application of *res judicata*. *River Park, Inc. v. Highland Park*, 184 Ill.2d 290, 302, 703 N.E.2d 883 (1998). Under the transactional test, "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* at 311; *Rodgers v. St. Mary's Hosp.*, 149 Ill.2d 302, 597 N.E.2d 616 (1992) (*Res judicata* did not bar a second case against a hospital where the first case was based on malpractice and the second case was for loss of evidence; the court reasoned the same evidence would not sustain both verdicts, and the facts essential to each suit did not arise from the same transactions or incidents.)

To determine whether there is an identity of cause of action between the first and second lawsuits, or here QBE I and QBE II, a court "must look to the facts that give rise to plaintiffs' right to relief, not simply to the facts which support the judgment." *Id.* at 309-10. An identity of cause of action is established, "if two claims are based on the same, or nearly the same, factual allegations." *Peregrine Financial Group*, *supra at* 314.

The transactional test has been described as follows:

In determining whether claims are part of the same cause of action, *River Park, Inc.* directs that we consider the claims in factual rather than evidentiary terms. We must examine the facts that give rise to the plaintiff's right to relief and assess whether they are linked in a manner such that they are part of a single transaction. The factors relevant to ascertaining whether they are so linked include their relation in time, space, origin, and motivation, whether they form a convenient trial unit, and whether their treatment as a single unit conforms to the parties' expectations and business usage or understanding. *Cload v. W*, 328

9

Ill.App.3d 946, 767 N.E.2d 486 (2d Dist. 2002), citing *River Park, supra,* 184 Ill.2d at 309; Restatement (Second) of Judgments § 24, at 196 (1982).

The change in facts between the 3rd and 7th Amended Complaints makes the application of *res judicata* impossible. In 2014, the Illinois Supreme Court held:

"The rule in Illinois is that res judicata extends only to the facts and conditions as they were at the time a judgment was rendered. When new facts or conditions intervene before a second action, establishing a new basis for the claims and defenses of the parties respectfully, the issues are no longer the same, and the former judgment cannot be pleaded as a bar in a subsequent action." *Hiroshi Hayashi v. Ill. Dep't of Fin. & Prof'l Regulation*, 2014 IL 116023 (Ill. 2014); citing *Northern Ill. Med. Center v. Home State Bank of Crystal Lake,* 136 Ill.App.3d 129, 144, 482 N.E.2d 1085 (1985); See also *Ropacki v. Ropacki*, 354 Ill.502, 506-07, 188 N.E. 400 (1933) and *Chicago Title & Trust Co. v. County of Cook*, 120 Ill.App.3d 443, 454, 457 N.E.2d 1326 (1983).

Here, new facts and conditions have been alleged in the 7th Amended Complaint establishing a new basis for the claims. The issues are not the same and the former judgment cannot be pleaded as a bar to the subsequent action. In QBE I, the Court was presented with the issue of whether there was an "occurrence," as that word was defined by the policies, alleged in the 3rd Amended Complaint, which would trigger QBE's duty to defend Barrier. The 3rd Amended Complaint alleged that work defects resulted in leaks that caused substantial damage to the Construction Project, the building, itself. (Dkt. 1, Ex. F, Count VIII, Paragraph 62, Count IX, ¶ 56) QBE argued that it owed no duty to defend Barrier in QBE I because there was no "occurrence" alleged in the 3rd Amended Complaint; the only damage alleged was to Barrier's own work on the building and the QBE policies did not cover Barrier for damage to its own work. QBE also argued that Barrier provided late notice of that "occurrence."

The Circuit Court in QBE I compared the 3rd Amended Complaint to the insurance policy language and case law relating to the definition of "occurrence", and

10

determined that the 3rd Amended Complaint did not plead an "occurrence" because it pled only damages to the building itself and not to property other than the building. (Dkt. 13, Ex. F, p. 12) The QBE I Court's additional holding of late notice of an "occurrence" does not alter the fact that a different occurrence is now alleged that triggers the QBE policies. Notice of this occurrence has been timely and is based on new and different facts not present before. The putative late notice in the 3rd Amended Complaint is predicated on different facts. This precludes a *res judicata* finding under *Hayashi.*

In QBE II, for the first time, the underlying Plaintiffs have pled an "occurrence" as the word is defined by the QBE policies in the 7th Amended Complaint. The new complaint now pleads personal property damage. It pleads:

> "…The defects have also caused damage…the wall finishings inside Units including but not limited to paint and wallpaper, window treatments inside Units, flooring inside of Units including but not limited to carpet and wood floors, **personal property inside Units**, and interior finishings of units."

(Dkt 13, Ex. G, Count XV, ¶ 72, Count XVI, ¶ 72, emphasis added.)

The Court is required to examine the facts that gives rise to the plaintiff's relief and assess whether they are linked in a manner such that they are part of a single transaction. *Cload,* 328 Ill.App.3d at 950; *River Park, Inc.,* 184 Ill.2d at 309. QBE would prefer that the District Court only focus on the language in the last portion of the Circuit Court's decision relating to the issue of late notice, and ignore the finding of no "occurrence." To do so would turn the concept of *res judicata* on its head. The essential ruling is the lack of an occurrence in 3rd Amended Complaint. This deficiency is now addressed for the first time in the 7th Amended Complaint with the pleading of new facts that have intervened. *Hayashi* instructs that intervening changes to facts destroy *res judicata.* The decisions in *River Park* and *Cload* counsel against ignoring the facts and

11

engaging in a limited, narrow review. There is no identity of cause of action between the two declaratory judgment actions.

### 2. Pre-Suit Late Notice Of An "Occurrence" or Offense In The 7th Amended Complaint Was Never Litigated In QBE I.

QBE asserts that the issue of late notice of an "occurrence" or offense was fully litigated in QBE I. It was not. The issue litigated in QBE I was whether there was an "occurrence" alleged in the 3rd Amended Complaint, which would trigger a duty to defend by QBE in favor of Barrier. In applying Illinois law to allegations in a case, the courts look only to the complaint as it stands then and not as it may (or may not) stand in the future. *Medmarc Cas. Ins. v. Avent Am. Inc.*, 612 F.3d 607, 618 (7th Cir. 2010). The 7th Amended Complaint was the first opportunity for the parties to litigate the issue of whether there is property damage alleged and, therefore, claim preclusion cannot apply.

An insured is entitled to a new determination of an insurer's duty to defend when a complaint in the underlying litigation is amended and amendments to later-filed pleadings are not subject to *res judicata* where they raise new issues. The cases of *Millers Mutual Ins. Assoc. of Ill. v. Ainsworth Seed Co.*, 194 Ill.App.3d 888, 552 N.E.2d 254, 257-58 (4th Dist. 1989), and *Illinois Farmers Ins. Co. v. Preston*, 153 Ill.App.3d 644, 505 N.E.2d 1343, 1348 (2d Dist. 1987), are instructive. In *Miller*, the Appellate Court reversed a lower court finding of an insurer's duty to defend based on the allegations in the then existing pleading but also stated that:

> "[i]f, at any time, plaintiff in the underlying case is ever permitted to amend her complaint in such a way as to … make her alleged cause of action subject to coverage under the instant policy…[the insured] will be entitled to new consideration of the question as to whether plaintiff has a duty to defend or indemnify."

12

In *Illinois Farmers Ins. Co.,* an insured argued that a ruling of no duty to defend/indemnify based on an exclusion for an intentional act was premature because evidence could be generated to show that there were negligence acts. The Appellate Court held that its decision would not be res judicata for a future claim of a negligent act because, "[e]ven though two lawsuits may involve the same parties or the same factual situation, the doctrine of res judicata is only applicable when the two lawsuits involve the same cause of action." *Id.* at 1348.

QBE cites to *Walsh Constr. Co. v. Nat'l Union Fire Ins. Co.*, 153 F.3d 830, 833 (7th Cir. Ill. 1998), but does not discuss it. In that case, the 7th Circuit addressed the application of *res judicata* in a declaratory judgment action where, during the pendency of the state court litigation, an amended pleading was filed that would trigger a duty to defend. The Seventh Circuit cited to the two above-addressed Illinois cases and recognized that these Illinois cases support the "decades of Illinois jurisprudence holding that res judicata applies only to matters which actually were or could have been litigated in prior proceeding." *Id.* at 832.

A major distinction between *Walsh* and the instant case is that in the *Walsh* case, the insureds had the opportunity to address whether an amended pleading triggered a defense/coverage during the pendency of the declaratory judgment action. In contrast, the 7th Amended Complaint was not filed until long after QBE I had been dismissed. Barrier has had no prior opportunities to address the issues raised in the 7th Amended Complaint.

The facts in the 7th Amended Complaint were not at issue at the time that the Circuit Court ruled on QBE I. Indeed, several more amended complaints were filed

13

after the ruling in QBE I. The 7th Amended Complaint was not filed until 2014. The 7th Amended Complaint was the first pleading to allege property damage to personal property, which is an "occurrence" under the QBE policies. Accordingly, there is no ruling in QBE I that can determine the coverage issues under the 7th Amended complaint.

QBE's argument views "late notice" as a singular defense that would apply equally to the 7th Amended Complaint. This interpretation is not supported by the policies' contractual language or the case law. The policies provide that that the insured is required to give notice of an "occurrence" as that word is defined in the QBE policies or an offense (an undefined term) "as soon as practicable." (Policy Section IV, 2.a.) At the time of the filing of the Second and Third Amended Complaints, there was a duty to give notice of an actual suit and Barrier gave timely notice of the suit. However, there was no contractual duty for Barrier to provide pre-suit notice to QBE because there was not an "occurrence" as the word is defined by the QBE policies alleged prior to the filing of the 7th Amended Complaint. (Dkt. 13, Ex. F, p. 12; Circuit Court's opinion finding no "occurrence" in QBE I.)

Moreover, the lack of contractual analysis of whether Barrier breached the QBE policies' late notice provisions by the Court in QBE I to support its finding of lack of notice underscores the fact that the late notice finding was not necessary to the QBE I court's finding of no duty to defend in favor of QBE. At best, it is dicta and not subject to any *res judicata* claim. The Court in QBE I had already determined that the 3rd Amended Complaint did not allege an "occurrence." The subsequent finding of late notice is internally inconsistent with that ruling, as the policies only required pre-suit

notice of an "occurrence." Thus, the unnecessary finding regarding late notice can be considered dicta and not subject to *res judicata* or claim preclusion.

QBE also argues that Barrier did not file an appeal from the finding with respect to the late notice in QBE I. There was nothing to appeal. Barrier accepted the logic of the Circuit Court that no "occurrence" was alleged in the 3rd Amended Complaint and, at that time, there was no duty to defend Barrier. While it disagreed with the comments related to late notice, late notice was not an appealable issue because appealing it would not have changed the positions of the parties. Unless it appealed the issue of whether "occurrence" was alleged under the 3rd Amended Complaint, which it chose to no longer pursue, there was no purpose to appealing late notice.

The law does not require a useless act. *See Liberty National Bank of Chicago v. Newberry*, 6 Ill.App.2d 252, 257, 127 N.E.2d 269, 272 (1955); *Osgood v. Skinner*, 111 Ill.App. 606, 610 (1904). An appeal in QBE I of the late notice issue would not have changed the outcome of the ruling with respect to the 3rd Amended Complaint's failure to plead an "occurrence", nor does it have any bearing on the rulings on the issues now before this Honorable Court on the 7th Amended Complaint in QBE II.

WHEREFORE, Defendant, Barrier Corporation, respectfully requests that this Court deny Plaintiff QBE Insurance Corporation's Motion for Judgment on the Pleadings and for all other relief proper in the premises.

    Respectfully submitted,

    BARRIER CORPORATION

    By:    /s/ Sara E. Cook
           /s/ Bruce B. Marr
           /s/ Kristin D. Tauras

15

## CERTIFICATE OF SERVICE

    I hereby certify that on March 11, 2015, I electronically filed the foregoing with the Clerk of the U. S. District Court, for the Northern District of Illinois, Eastern Division, using the CM/CEF e-filing system which will send notification of such filing to the following:

Robert Marc Chemers
Pretzel & Stouffer, Chtd.
One South Wacker Drive
Suite 2500
Chicago, IL 60606-4673
(312) 346-1973
Email: rchemers@pretzel-stouffer.com

William W. Elinski
Pretzel & Stouffer, Chtd.
One South Wacker Drive
Suite 2500
Chicago, IL 60606-4673
(312) 346-1973
Email: welinski@pretzel-stouffer.com Bruce de'Medici

                              By:   /s/ Sara E. Cook
                                     /s/ Bruce B. Marr
                                     /s/ Kristin D. Tauras

Sara E. Cook
ARDC 03126995
Bruce B. Marr
ARDC 06184124
Kristin D. Tauras
ARDC 06216004
McKenna Storer
33 North LaSalle Street, Suite 1400
Chicago, IL 60602
Phone: 815-334-9692
Fax: 815-334-9697
scook@mckenna-law.com
bmarr@mckenna-law.com
ktauras@mckenna-law.com